**PASINKOFF**
v.
**ATLANTIC COAST LINE R. CO.**
Civ. No. 10962.

United States District Court
E. D. New York.
May 25, 1954.

Morris J. Ezra, New York City, Albert J. Klein, New York City, of counsel, for plaintiff.

Carter, Ledyard & Milburn, New York City, James J. Mennis, New York City, of counsel, for defendant.

GALSTON, District Judge.

The plaintiff's cause of action rests on her proof that while a train operated by the defendant corporation, on its way north, stopped at the Winter Park station, in Winter Park, Florida, she boarded the train for the purpose of visiting a friend who was a passenger, occupying Roomette 8 in one of the Pullman cars. She said that she had asked the porter for permission to board the train and had shown him a paper on which her friend's name and roomette number were written, and that the porter permitted her to visit, and indeed led her to Roomette 8. She remained there two or three minutes. On returning to the platform, as she was going down the steps of the car, the train gave a sudden jerk causing her to lose her balance and fall to the station platform. According to the plaintiff, at the time she was alighting the Pullman car porter was standing on the platform of the car near the head of the stairs."

Her testimony is contradicted by the testimony of the porter. He said that when the train arrived at the station he descended to the station platform; that he did not put a step box on the platform as the plaintiff contends because the low-est step was but nine inches above the platform. The porter said five persons boarded the train, one of whom was the plaintiff. He was not shown the slip of paper which is in evidence as Exhibit 1. All that the plaintiff asked him was whether the car was FW 17. Then she went up the steps and into the car. He says that he did not show plaintiff to the roomette; that he was busy taking people to Bedrooms C and D, and that while he was in Bedroom D he saw that the train was in motion. He thereupon returned to the car platform, and on the way plaintiff rushed past him and said she had to get off. He told her not to get off, but nevertheless she did get on the steps and did get off. He said the train had traveled about two car lengths at that time from the stop position, and had attained a speed of about ten miles an hour.

Of considerable importance in the case is the statement of the plaintiff to the defendant's claim agent, made the day after the accident. In this statement there is no reference made to Exhibit 1 —the slip which the plaintiff said she showed the porter.

The conductor testified that there is no scheduled time for the train to remain in Winter Park station, and that the train stops there only long enough to pick up passengers, mail and baggage. He stated that at the time in question the train was in the station about two or three minutes. According to his testimony he called "All aboard" after checking the coach cars to see that all passengers had got on, and then looked to the Pullman conductor for his signal. Upon receiving the "All clear" signal from the Pullman conductor he signalled the baggage master of the train to give the required communicating signal to the engineer. The engineer gave four blasts on the train whistle to signal the flag man at the rear end of the train, and then, upon getting an answering signal from the flag man, gave a two blast signal before starting the train. He saw nobody detraining.

The conductor and the flag man and the Pullman porter all testified that the train started smoothly and without any sudden or unexpected jerk.

If the plaintiff's testimony is to be believed, the defendant had actual notice of her presence on the car for the purpose of visiting a passenger thereon. However, in contradicting the plaintiff's version, the Pullman porter gave a convincing and straight forward account of what had taken place. According to his testimony the plaintiff boarded the Pullman car without indicating to him in any way that she intended only to visit a passenger. He stated that he assumed, therefore, she was remaining on the train as a passenger. The plaintiff stated that she was already on the car steps when the train started to move. On the other hand the porter's testimony is that the plaintiff came hurrying along the aisle of the Pullman car on her way to the steps after the train was already in motion.

The uncontradicted testimony indicates that Mrs. Herling, the passenger whom the plaintiff had gone to visit, appeared at the platform of the car shortly after the plaintiff had stepped off or fallen from the steps. The porter stated that she asked him whether the lady (meaning the plaintiff) had got off all right. Plaintiff testified that Mrs. Herling followed behind her from the roomette when the plaintiff was leaving. Mrs. Herling's presence at the car platform, and her inquiry to the porter, indicate that there was some concern on her part for the plaintiff. Undoubtedly this concern was brought about by some knowledge on Mrs. Herling's part that the plaintiff would encounter difficulty in getting off.

Since the testimony discloses that the plaintiff and Mrs. Herling were together only in Mrs. Herling's roomette, it is not unreasonable to assume from the circumstances that the plaintiff was in the roomette when the train began to move. It may be noted that the conductor testified to a talk with Mrs. Herling some time after the incident in question wherein she stated to him that the plaintiff had stepped off the car when the train was moving.

The plaintiff testified to a clear recollection of having seen a step box placed on the station platform beneath the steps that she had to use in getting on and off the Pullman car. However, it is clear from other testimony that the station platform at Winter Park is 12 to 13 inches above the level of the railroad tracks (the porter had estimated 9 inches), so that no step box is required to reach the lowest step of a railroad car. Photographs in evidence bear this out.

It may be concluded, therefore, that the plaintiff's recollection is faulty in that respect. This may also be taken into consideration in determining the reliability of her recollection on other aspects of the case, particularly as to whether she exhibited the slip of paper on which was written Mrs. Herling's roomette number to the porter, and informed him of her purpose, as she was about to enter the car. The plaintiff's testimony is that when she told the porter she wanted to go to Roomette No. 8 to visit the passenger there, he escorted her through the car to the roomette. Roomette No. 8 was about two-thirds the length of the Pullman car from the steps where the plaintiff entered the car. There were four other people who boarded the train as passengers on the car in question immediately after the plaintiff, and it is difficult to believe, without a showing of special circumstances that the porter would neglect his primary duty—to assist passengers to their rooms and to take care of their baggage—merely in order to accommodate a visitor.

The plaintiff contends furthermore that the custom of friends and relatives visiting passengers aboard trains is so well known that the defendant is bound thereby, and that the custom constitutes constructive notice to the defendant of her presence aboard the train as a non-passenger. Cases are cited in which such a custom is given as a reason for classifying such persons as invitees or licen-

sees, as opposed to trespassers. Defendant here, however, has at no time contended that the plaintiff must be regarded as a trespasser. Moreover there is no proof here of such a custom existing in respect to the Winter Park station. It should be noted in this connection that Winter Park is not a terminal of the defendant railroad, but only a station where its train makes a stop of short duration.

Regarding the plaintiff as a licensee, the question with respect to the defendant's liability is whether it exercised "all ordinary and reasonable care and diligence" in the circumstances of the case, Florida Statutes Annotated (1949) § 768.05. Cases are cited by the plaintiff which hold that the sudden starting of the defendant's train, without notice or warning, was active negligence on the part of the defendant railroad which made it liable to one aboard its train as an invitee or licensee seeing a passenger off. In the case at bar, however, the evidence adduced requires the conclusion that the plaintiff's injuries were due to her attempting to get off a moving train. The plaintiff's evidence fails to prove actual notice to the defendant that the plaintiff had boarded the train as a non-passenger who intended to get off before the train left the station. With respect to notice of the train starting, as already noted, the conductor stated that he called "All aboard" and both he and the flag man testified to the engineer having blown the train whistle. The plaintiff stated she heard neither the "All aboard" signal nor the train whistle signal. It has been held that under Florida law evidence that signals were not heard is insufficient to raise an issue where there is positive evidence that the signals were given, Van Allen v. Atlantic Coast Line Railroad Co., 5 Cir., 109 F.2d 780, 781, 782, and cases cited.

At most the plaintiff was a licensee, as she boarded the train indeed self-invited. The railroad employees testified that it was against the rules of the company to allow visitors to board the train. Such a rule would be of special importance at station stops at which the train made but brief stops. However, the main difficulty with the plaintiff's case is that in seeking to get off a moving train she herself was guilty of negligence. See Harvin v. Kenan, 157 Fla. 603, 26 So.2d 668. That being so her complaint must be dismissed.

Appropriate findings of fact and conclusions of law in conformity with the foregoing opinion will be filed herewith.